THE CREAMERY PACKAGE MANUFACTURING COMPANY, Appellant, *v.* GEORGE H. HORTON and SARAH J. HORTON, Respondents.

Third Department, May 2, 1917.

Conditional sale — failure to file — title of conditional vendor as against third party in possession — bankruptcy — title of trustee in bankruptcy of vendee — discharge — provability and release of claim for conversion.

The failure to file a conditional contract of sale does not, as between the parties, affect the validity of the vendor's title.

Where the conditional vendee of a silo placed it upon lands owned by his wife, where it was cemented to a concrete base and connected to the barn, but in such a manner that it could be detached and removed without causing any serious damage to the realty, and she failed to establish that she was a purchaser in good faith and that she had no knowledge of the condition of the contract, and had parted with value or lost some right on account of the annexation of the silo to her premises, the title remained in the conditional vendor as against her.

Where, after the annexation of the silo to the realty, the vendee was adjudicated a bankrupt, his trustee acquired no lien on the property and could not impeach the validity of the contract for failure to file the same.

The filing of the petition in bankruptcy did not bring into existence a claim in favor of the conditional vendor against the vendee and his wife for a conversion, and where such liability did not arise or become fixed until a demand and refusal for the property, made three months after the petition was filed, a claim therefor was not provable in bankruptcy and was not released by the discharge.

LYON and COCHRANE, JJ., dissented on opinion of McCANN, J., at Trial Term.

APPEAL by the plaintiff, The Creamery Package Manufacturing Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Broome on the 26th day of January, 1917, upon a decision of the court dismissing the complaint on the merits after a trial before the court without a jury.

The action was brought to recover damages resulting from the alleged conversion of a silo. When the action came on for trial the parties submitted an agreed statement of facts, and supplemented it by evidence taken before a referee, upon the question whether the defendant Sarah J. Horton had knowledge of the terms of the contract at the time of the

execution of the contract, or when the silo was put upon her lands.

The most material facts as set forth in the written stipulation are as follows: On the 20th day of August, 1912, the plaintiff, under a written contract, sold and delivered to the defendant George H. Horton a silo. Fifty dollars of the purchase price was to be paid upon delivery of the silo and the remainder, $181.50, in two installments, one-half October 1, 1913, and one-half October 1, 1914. It was expressly agreed "that the title to the said silo as personal property shall remain in the Creamery Package Mfg. Co. until fully paid for, according to the terms of sale, and the delivery of said silo is conditional upon such agreement." The contract was never filed in any clerk's office, as required by the Personal Property Law (Consol. Laws, chap. 41 [Laws of 1909, chap. 45], § 62 et seq.), and no other payment was made by the defendant.

After the delivery of the silo to the defendant George H. Horton, and sometime prior to October 1, 1912, it was placed by him upon lands owned by the defendant Sarah J. Horton, where it has since been and now is in the possession of the defendants. It was placed within two or three feet of the cow barn upon said lands by placing it "upon a cement foundation, constructed especially for the support of the silo and independent of any other foundation or building, the foundation extending six feet underground and from six inches to two feet above the surface. The silo is 28 feet high above the cement foundation and is cylindrical in shape, 14 feet in diameter. * * * It is cemented to the concrete base on the inside by a strip of concrete extending around the base and up the side for a distance of four inches. * * *

" On the side of the silo nearest the barn were a series of openings in the silo the full height of it. For the purpose of communication between the silo and the barn, about two feet in width of the siding boards were removed from the barn, as well as a part of a sleeper or beam, and the opening between the barn and the silo was boarded up the full height of the silo to keep out the wind and weather, the boards being nailed to the silo and to the barn. If the silo and cement base were removed, the barn might be restored to its original

condition by replacing the siding boards, removed for the purpose of communication between the barn and the silo, and replacing the portion of the sleeper or beam."

In July, 1915, George H. Horton was adjudged a bankrupt in the United States District Court and on the 26th day of January, 1916, a decree was made and entered in that court discharging him from all debts which existed July 19, 1915, excepting such debts as are by law excepted from the operation of a discharge in bankruptcy. The plaintiff's claim for the unpaid purchase price was included by the bankrupt in his list of debts and due notice of the bankruptcy proceeding served on the plaintiff.

On the 20th day of October, 1915, a demand was duly made upon the defendants for the delivery to the plaintiff of said silo, but the defendants refused to deliver or surrender possession thereof to the plaintiff. The court found these facts and that the defendant Sarah J. Horton had knowledge of the terms of the contract at the time of its execution and at the time the silo was placed upon her lands.

*T. B. & L. M. Merchant* [*Leslie J. Waite* of counsel], for the appellant.

*Edward F. Ronan* [*George M. Le Pine* of counsel], for the respondents.

SEWELL, J.:

There is no doubt that, as between the plaintiff and the defendant George H. Horton, the failure to file the contract did not affect the validity of the plaintiff's title to the silo. It is equally clear that the title to it remained in the plaintiff as against the defendant Sarah J. Horton, as it appears that the silo could be detached and removed without causing any serious damage to the realty and she failed to meet the burden imposed upon her of showing that she was a purchaser in good faith, that she had no knowledge of the condition of the contract and had parted with value or lost some right on account of the annexation of the silo to her premises. (*Hopkins* v. *Davis*, 23 App. Div. 235; *Crocker-Wheeler Co.* v. *Genesee Recreation Co.*, 160 id. 373; *Davis* v. *Bliss*, 187 N. Y. 77; *Central Union Gas Co.* v. *Browning*, 210 id. 10.)

Upon the facts in the record we also think that the trustee in bankruptcy acquired no lien on the property, and, therefore, could not impeach the validity of the contract for not filing. He acquired no more, or any other or further right than any creditor of the bankrupt could have acquired by a legal or equitable proceeding under the statutes of this State. (*Dooley* v. *Pease,* 180 U. S. 126; *Thompson* v. *Fairbanks,* 196 id. 516; *Humphrey* v. *Tatman,* 198 id. 91; *Mattley* v. *Wolfe,* 175 Fed. Rep. 619.)

It does not appear that any creditor could have secured a levy by execution upon the property. There is nowhere in the record any suggestion that there was a creditor of the vendee for more than two years after the silo was attached and after it had become, on account of its nature and the manner of its annexation to the realty, a part of it as to all persons except the parties to this action.

According to our view of the conceded facts of this case the trustee in bankruptcy is in the same position he would have been if the defendant Sarah J. Horton had purchased the silo of her codefendant and obtained a delivery of it before any debt had been contracted by him. It is plain that he would then be in the situation of every creditor who comes with an execution after his debtor has in some way parted with or become divested of his property.

There is no force in the contention of the respondent that the plaintiff's claim for conversion was provable in the bankruptcy proceeding and was released by the discharge. The defendant came lawfully into possession of the silo. The attachment of it to the realty, in the manner it was attached, was not, under the circumstances, a conversion *per se.* There is nothing to show that the possession of the defendants was in hostility to the plaintiff's rights, or that it was not in protection of the plaintiff's interest until the demand and refusal three months after the adjudication in bankruptcy. The filing of the petition in bankruptcy did not bring into existence a claim in favor of the plaintiff against the defendants for a conversion. That liability did not arise or become fixed until three months after the petition was filed, when the wrong was done. Until then, the bankrupt or his trustee, if he had one, could have paid the amount due and become

the owner. Neither did so and, therefore, the title remained in the plaintiff. By the provisions of the Bankruptcy Act there must be a fixed liability at the time of filing the petition. (*Phenix Nat. Bank* v. *Waterbury*, 197 N. Y. 161.)

The case at bar is clearly distinguishable from *Crawford* v. *Burke* (195 U. S. 176) and *Wood* v. *Fisk* (215 N. Y. 233). In each of these cases a cause of action for conversion was complete at the time of the bankruptcy.

We think the defendants failed to make out a defense to this action and, therefore, the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concurred, except LYON and COCHRANE, JJ., who dissented on opinion of McCANN, J., at Trial Term.

Judgment reversed and new trial granted with costs to appellant to abide event.